## HOGAN v. CARR & ANDERSON.

1. Upon the hirer of a slave refusing to provide necessary medical attendance for the slave, and insisting on his laboring when physically unable to do so, the owner may take possession of the slave for the purpose of having medical aid afforded him; and upon the refusal of the hirer again to receive the slave when restored to health, so as to be able to work, the entire amount of the hire is recoverable.

ERROR to the County Court of Marengo.

Assumpsit by the plaintiff against the defendants in error, on a promissory note.

Upon the trial of the cause, it was proved that the note sued on, was given for the hire of a slave, for one year, to the defendant Carr; and the defence was, that the plaintiff took the slave out of the pessession of Carr, about five months before the expiration of the year, for which he was hired.

The plaintiff, in excuse, offered to prove that, in consequence of mal-treatment by Carr, the slave was unable to continue at work, and required rest and immediate medical attention. And further, offered to prove by physicians, who were called at the request of plaintiff and Carr, that to continue the slave at work, in his then situation, would be at the extreme hazard of one of his legs, and, perhaps, of his life; and that they so stated in the presence of Carr. That the slave was scarcely able to stand from extreme physical debility; and that notwithstanding this, the defendant Carr refused to call in medical aid, or to give the slave rest, and declared he would continue him at work without regard to the consequences. The plaintiff further offered to prove, that he retained the slave only so long as was necessary for medical treatment; and that so soon as he was pronounced able to work by the attending physician, he was tendered to Carr, who refused to receive him. The plaintiff further offered to prove, that Carr was insolvent. All of which evidence the court rejected; and charged the jury, that the contract of hire was entire, and that the plaintiff, having put an end to it by taking the

slave away without the consent of Carr, before the expiration of the period for which the slave was hired, he could not recover any thing.

The jury found for the defendants; and the plaintiff now assigns for error—1. The rejection of the testimony. 2. The charge of the court.

PECK & CLARKE, for plaintiff in error.

ORMOND, J.—The hire of a slave, for a stipulated period, is a purchase of the services of the slave for that time, the reversionary interest remaining in the owner. The hirer, in addition to the express contract of the parties, which, in general, only provides for the price and time of service, impliedly stipulates, that he will treat the slave humanely, and provide for his necessary wants. That in sickness, he will provide necessary medical aid, and will not require him to labor when physically unable to do so. In the case of a hired horse, it has been held, that after the animal is exhausted, and has refused its feed, the hirer is bound not to use it; and if he does, and the horse is injured, it is a violation of the bailment, for wh ch the h.rer is responsible. [1 Niel Gow. 1.]

The conduct of the defendant, in refusing to pi ovide the necessary medical aid, and in requiring the slave to labor when physically unable, was a violation of the contract of hiring, and being an injury to the reversion, authorizes the owner to rescind the contract, and repossess himself peaceably of the slave, or to consider the contract as still subsisting, and supply the necessary wants of the slave himself.

In Rasco and Brantley v. Willis, [5 Ala Rep. 38,] we held, that if a hired negro was employed by the hirer in such dishonest pursuits as necessarily to familiarize him to the commission of crime, and to debauch his morals, that the owner might rescind the contract, and resume the possession of his slave; the ground of the dec.sion being the injury to the reversion, and the violation of the implied stipulation, that the slave should be employed in some honest pursuit. That the conduct of the hirer, in this case, was a violation of his contract, and threatened the destruction of the reversionary interest, is obvious from the mere statement of the case.

In Gibson v. Andrews, [1 Ala. Rep. 66,] it was held. that the master was under both a moral and legal obligation to supply the necessary wants of his slave. That this duty, which he owed both to the slave and the community, he could not absolve himself from by voluntarily permitting the slave to be absent from him, unless he provided some one to stand in the relation of master to him: and in that case, he was held liable for necessary medical services rendered to the slave, who was abandoned by the hirer.

Here, although the slave was not abandoned by the hirer, he refused to call in necessary medical aid, and required him to labor, though physically unable.  It is not necessary to inquire whether, in this case, as in the one just cited, the owner would have been liable for medical services furnished without his request; as it is perfectly clear, that upon the refusal of the hirer so to do, he had the right to take the possession of the slave for the purpose of having medical aid afforded to him.

In this, it is difficult to see how the hirer could be prejudiced, as the owner was merely doing that which the hirer was under a legal and moral obligation to have done himself.

We have shown that the violation of the implied stipulations of the contract, authorized the owner to rescind it, when, according to the decision in Rasco & Brantley v. Willis, he would have been liable for the services actually performed according to the rate agreed on.   We think, however, he might, if he chose, elect to consider the contract as still subsisting, by returning, or offering to return, the slave as soon as he was able to labor.

This right the hirer could not defeat by refusing to receive the slave when tendered.   An offer to do an act, is equivalent to a performance, where the thing to be done is prevented by the party to be benefitted by it.

The result of this examination is, that the court erred in its charge to the jury, as well as in the rejection of the testimony proposed to be given in evidence; and its judgment is, therefore, reversed, and the cause remanded.